ALLYN W. COOMBS, trustee, & another[1] *vs.* BOARD OF
SELECTMEN OF DEERFIELD & another.[2]

No. 87-503.

Franklin. January 14, 1988. — September 16, 1988.

Present: ARMSTRONG, KAPLAN, & WARNER, JJ.

*Way,* Public: discontinuance. *Statute,* Construction.

A town's selectmen had no authority under G. L. c. 82, § 32A, as appearing
   in St. 1983, c. 136, to discontinue maintenance of a segment of a county
   highway located within the town. [380-384]

CIVIL ACTION commenced in the Superior Court Department
on March 13, 1986.

The case was heard by *Raymond R. Cross,* J., on a motion
for summary judgment.

*Wendy Sibbison* for the defendants.
*Benjamin A. Barnes* for the plaintiffs.

ARMSTRONG, J.  Hawks Road in Deerfield, originally an
Indian trail, was laid out as a county highway in 1754. From
its intersection with Upper Road in Deerfield, it runs north
and west into the neighboring town of Shelburne. The 1.62
mile segment of Hawks Road involved in this action is unpaved
road through woods and wetlands which does not, so far as
the record indicates, have any residences or structures. It is
used primarily by loggers and farmers, although several per-
sons, at least, use it as a shortcut between Deerfield and Shel-
burne. The plaintiffs, as trustees of the Allyn W. Coombs,
Inc. Profit-Sharing Retirement Plan, own a ninety-seven acre
parcel bordering on this segment which they intend to subdivide.

[1] Joan C. Coombs, trustee. Allyn W. Coombs and Joan C. Coombs are
trustees of the Allyn W. Coombs, Inc. Profit-Sharing Retirement Plan.

[2] The town of Deerfield.

Several other persons own parcels similarly situated on which they intend to build houses. The selectmen of Deerfield are concerned that development will ultimately necessitate major expenditure to pave the road for the use of cars, school buses (see G. L. c. 71, § 68), fire trucks, and the like. Deerfield's conservation commission is concerned about the effect of road widening, paving, and maintenance on the adjacent wetlands. Some residents are concerned to protect the unspoiled woodland character of the area. These concerns led, on August 22, 1984, to a vote by the selectmen, after a public hearing pursuant to G. L. c. 82, § 32A, purporting to discontinue maintenance of Hawks Road in the described stretch. The plaintiffs in this action challenge the authority of the selectmen under that section to discontinue maintenance of a county highway. A Superior Court judge allowed the plaintiffs' motion for summary judgment and entered a judgment quashing the decision of the board of selectmen to discontinue the road.

Section 32A, as rewritten in 1983 (by c. 136 of the acts of that year), authorizes "[t]he board or officers of a city or town having charge of a public way . . . , upon finding that a city or town way or public way has become abandoned and unused for ordinary travel and that the common convenience and necessity no longer requires said town way or public way to be maintained in a condition reasonably safe for travel, [to] declare that the city or town shall no longer be bound to keep such way or public way in repair . . . ." The plaintiffs' contention is that the authority conferred by this section extends only to city or town ways, not to county ways, and that cities and towns, despite their statutory obligation to keep up the county ways within their boundaries (G. L. c. 84, § 1), cannot properly be said to be in "charge of" such ways in view of the pervasive authority of the county commissioners over the original layout, construction, and any subsequent alteration or relocation of such ways and their continuing authority to require cities and towns to repair or alter county highways. See G. L. c. 82, §§ 1, 5, 6, 8, 10-12, 14, & 15. The town focuses on the fact that § 32A, by its terms, applies not only to city and town ways but also to "public ways" in general and urges that it does have

"charge of" Hawks Road in the sense that it is charged by law with the duty of maintaining Hawks Road and effecting any repairs or alterations ordered by the county commissioners.

Prior to the 1983 amendment, G. L. c. 82, § 32A, authorized county commissioners, "[u]pon petition in writing of the board or officers of a town having charge of a public way, . . . whenever common convenience and necessity no longer require such way to be maintained in a condition reasonably safe and convenient for travel, [to] adjudicate that said way shall thereafter be a private way and that the town shall no longer be bound to keep the same in repair . . . ."[3] "Public way," as there used, doubtless included public ways of any type, whether county or town, so long as the board or officers of the town had "charge of" the way. It is improbable that the draftsmen would have used the general term public way if they intended the statute to apply only to one type of public way — a town way — and, as the county commissioners held the reins, rather than the town officials, the anomaly that gives rise to the present litigation — permitting town officials to determine the future of county roads — did not exist. By a natural reading of the pre-1983 statute, therefore, the selectmen or road commissioners of a town, charged by the law with the day-to-day upkeep of town ways and county highways (but not State highways — see G. L. c. 81, §§ 13, 15, 18), could petition the county commissioners for reduction in the status of either type of way from public to private, thus eliminating the expense of the town's burden of maintenance, while leaving unimpaired the public's right of access over the road. As to the status of "statutory private ways" generally, see *United States* v. *125.07 Acres of Land, More or Less*, 707 F.2d 11, 14 (1st Cir. 1983), and cases and statutes cited.

The 1983 revision had its origin in House No. 3611 of that year, a bill that would have eliminated the petition procedure

---

[3] This version of the statute was inserted by St. 1924, c. 289, and remained unamended until 1983. Provisions not reproduced in the text (1) required the town to post notices to warn the public of the status of the way at points where it joined to public ways and (2) specified that it applied only to towns, not to cities.

and vested in the selectmen or road commissioners directly the authority to discontinue maintenance on ways found to be "abandoned and unused for ordinary travel." This bill was entitled, "An Act establishing procedures by which town officials can find that a highway or public way is unused for ordinary travel, and to free the town from all further responsibility for such highway or public way". As filed it applied unmistakably to county highways as well as to town ways — "highway" being the term used both traditionally and in c. 82 to denote ways laid out by the county. Compare G. L. c. 82, § 1, with § 21. See *Newburyport Redev. Authy.* v. *Commonwealth*, 9 Mass. App. Ct. 206, 223 (1980). The text of the bill is set out in the margin.[4]

The bill was reported out favorably by the committee on transportation (1983 House No. 6019), but not without several significant amendments. The one which concerns us is the substitution, for the words "highway or public way" (in H. 3611), of the words "town way or public way" (in H. 6019). "Public way," standing by itself, has a broad connotation; "town way or public way" is enigmatic, because all town ways, even those denominated "private," are public in the sense that the public has an unlimited right of access. *Denham* v. *County Commissioners of Bristol*, 108 Mass. 202, 204-205 (1871). The uncertainty created by the phrase "town way or public way" justifies looking at the legislative history, and the com-

---

[4] "Notwithstanding the provisions in Section[s] 1 and 22 of Chapter 84 of the General Laws, the selectmen or road commissioners of a town may, after holding a public hearing, notice of which shall be published in a newspaper of general circulation in the town once in each of two successive weeks, the first publication to be not less than fourteen days before the day of the hearing and by posting in a conspicuous place in the town hall for a period of not less than fourteen days before the day of the hearing, upon finding that a Highway or Public Way has become abandoned and unused for ordinary travel and that the common convenience and necessity no longer require said highway or public way to be maintained in a condition reasonably safe and convenient for travel, . . . declare that the town shall no longer be bound to keep such highway or public way in repair and upon filing of such declaration with the Town Clerk such declaration shall take effect, provided that sufficient notice to warn the public against entering thereon is posted at both ends of such highway or public way, or positions [portions?] thereof."

mittee's deliberate striking of the word "highway" and sub-stituting therefor the words "town way" strongly suggests an intention to narrow the scope of the bill to exclude its application to highways laid out by the county. Looked at another way, if "public way" in the transportation committee redraft is read to include county highways, what was accomplished by the amendment? An intention to exclude county highways is confirmed persuasively by subsequent legislative action: the House committee on bills in the third reading, on broadening the bill to include ways in cities as well as towns, amended the title of the bill to "An Act further regulating the procedures for abandoning certain municipal ways." Where the text is uncertain, the title that was appended to the legislation when it passed may be relied on as indicative of the legislative intent. See *Charles I. Hosmer, Inc.* v. *Commonwealth*, 302 Mass. 495, 501 (1939).

We recognize that this construction of § 32A leaves the words "public way" (in the phrase finally adopted, "city or town way or public way") without obvious application. Possibly the draftsmen were concerned that "city or town way" might be read to refer only to ways laid out or accepted by the city or town, as opposed to local ways made public by prescription. See *Fenn* v. *Middleborough*, 7 Mass. App. Ct. 80, 83-87 (1979). Perhaps they simply failed to consider that the change from "highway" to "city or town way" might require correlative changes to avoid uncertainty. In any event, we could not avoid the problem by giving "public way" its usual broad connotation: "city or town way" would then be quite superfluous.[5] Forced to conclude that no reasonable construction can avoid surplusage, we opt for that which is in consonance with what seems to us to have been the Legislature's likely purpose in striking "highway" throughout the bill and amending the title to refer only to "[c]ertain [m]uncipal [w]ays."

---

[5] It cannot be contended that "city or town way" was intended to pick up statutory *private* ways, because a city or town has no obligation to maintain such ways. See *United States* v. *125.07 Acres of Land, More or Less,* 707 F.2d at 14, and authorities cited.

This construction, we realize, leaves cities and towns with no direct way of discontinuing maintenance of little used segments of ancient county highways within their borders — a result that could be achieved under the earlier § 32A through the procedure of petitioning the county commissioners.[6] If the purpose of the 1983 amendment was to enable cities and towns more easily to rid themselves of the upkeep obligation on little-used roads, that purpose may have been undermined in another way: by the requirement, not present in the statute before the 1983 amendment, of a finding that the way at issue "has become abandoned and unused for ordinary travel." It is at least doubtful that a finding to that effect was properly made on the evidence in this case (we need not decide the point) or could properly be made in any case where a little-used road is still travelled by one or more persons on a regular basis or is used for access to even a single residence. If the 1983 amendment was intended to liberalize use of § 32A, as the town asserts, legislative amendments should be considered as the most satisfactory way of dealing with the less than expansive language that was finally adopted.

*Judgment affirmed.*

---

[6] The result may still be achieved indirectly by the more cumbersome procedure of petitioning the county commissioners for discontinuance of the highway (or portion thereof) as a public way (G. L. c. 82, §§ 2-5) and then, if successful, laying out the discontinued portion as a municipal private way (G. L. c. 82, §§ 21-23). See also G. L. c. 82, § 29, authorizing county commissioners to lay out town private ways "for the use of one or more persons who are not inhabitants thereof."