JOHN J. LEARY *vs.* YACHT LEASING CORP. & another. December 28, 1978. 1. The appeal by the defendants to whom we refer collectively, from the "judgment" entered after the first trial and from the order granting the plaintiff's motion for a new trial is not properly before us. The "Findings and Judgment" entered on the docket June 3, 1977, was no more than an order for judgment, and did not constitute an appealable judgment within the meaning of Mass.R.Civ.P. 58(a), as amended effective January 1, 1977, 371 Mass. 908. *Levy* v. *Bendetson, ante* 558, 560-561 (1978). The order allowing the motion for a new trial was also interlocutory and not immediately appealable, although it is reviewable on the defendants' appeal from the judgment entered on the docket November 7, 1977. *Brooksbank* v. *Epstein*, 5 Mass. App. Ct. 377, 378-379 (1977). *Donoghue* v. *Donoghue*, 5 Mass. App. Ct. 876 (1977). The plaintiff's failure to describe with particularity the "error of law" referred to in his motion was cured by the detail supplied in the accompanying affidavit. Compare *Soares* v. *Lakeville Baseball Camp, Inc.*, 369 Mass. 974, 975 (1976). The motion was well founded, as there had been error in the disallowance of the plaintiff's claim for the return of the $35,000 paid by him to the defendants for the reasons

stated below. 2. We agree with the judge who presided over the second trial that the agreement to charter the yacht and the option to purchase it should be treated as representing a single transaction. We also think that the contemporaneously executed receipt for the plaintiff's $35,000 payment, identifying it as a "security deposit" under the charter agreement, must be considered one of the contract documents and read with the two agreements as identifying the purpose for which the payment was made and accepted. While the option agreement recited that a payment in the same amount had been made by the plaintiff as "consideration" therefor and as part of the $109,000 purchase price specified therein, it would be a contradiction in terms to treat the same $35,000 as both a refundable security deposit under the charter agreement and a nonrefundable down payment under the option agreement. But the latter agreement contained an ambiguity which permits an escape from that contradiction: it provided that the $35,-000 would be retained by the defendants "as part of the purchase price," but it was silent about the status of that payment in the event that the plaintiff should not elect to make the "purchase." The transaction is thus susceptible of being interpreted as one in which the $35,000 was initially a refundable security deposit but would automatically be converted into a nonrefundable down payment if and when the plaintiff should exercise his option to purchase the yacht. The plaintiff testified that he so understood the transaction. Inasmuch as the defendants drafted all the relevant documents, we resolve the ambiguity in the plaintiff's favor and adopt that interpretation. See *Beal* v. *Stimpson Terminal Co.*, 1 Mass. App. Ct. 656, 660 (1974), and cases cited. It follows that the plaintiff, who never exercised the option but expressly renounced it, was entitled to the return of the deposit, subject to any successful counterclaim interposed by the defendants under the charter agreement. And, because the plaintiff preserved his right to attack the judgment by taking a cross appeal, we hold that there was nothing in the agreements or the evidence to warrant the judge's rulings that the $35,000 payment be prorated over the life of the option period and that the defendants be permitted to retain any portion thereof on that theory. 3. To the extent that the counterclaims were based on lack of proper maintenance of the vessel while in the plaintiff's control, there is nothing in the defendants' brief addressed to the dismissal thereof which rises to the level of appellate argument within the meaning of Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975), and we therefore do not consider that issue. *Lolos* v. *Berlin*, 338 Mass. 10, 13-14 (1958). In so far as the counterclaims sought a full year's rent for the plaintiff's use of the vessel after the expiration of the original term of the charter agreement, they were properly dismissed. If, as argued by the defendants, the provision in that agreement whereby the plaintiff was given an "option to renew charter at the end of term" is to be construed in accordance with usage under the law of landlord and tenant, the defendants cannot prevail because they failed to protect their rights by executing a new charter agreement. *Leavitt* v. *Maykel*, 203 Mass. 506, 509 (1909). *Scirpo* v. *McMillan*, 355 Mass. 657, 659 (1969). We therefore conclude that the judge was right in awarding rent for only the two-month period after the end of the term during which the plaintiff had actual possession of the yacht. 4. The judgment entered November 7, 1977, is to be modified in accordance with the last sentence of part 2 of this opinion, and, as so modified, is affirmed. The appeal from the "judgment" entered June 3,

1977, and from the order granting the motion for a new trial is dismissed.

*So ordered.*

*Robert D. O'Leary* for the defendants.
*Frank S. Ganak* for the plaintiff.